### In re Arthur A. HEALD, Esq.

[664 A.2d 248]

No. 95-134

May 25, 1995. Pursuant to the recommendation of the Professional Conduct Board filed March 10, 1995, and approval thereof, it is hereby ordered that Arthur A. Heald, Esq., be publicly reprimanded and ordered to complete six hours of training in time management as part of his annual mandatory continuing legal education for the reasons set forth in the Board's final report attached hereto for publication as part of the order of this Court. A.O. 9, Rule 8E.

### FINAL REPORT TO THE SUPREME COURT

This case involves a pattern of neglect by respondent, of an estate which he was obligated to administer. It came before us by way of a stipulation entered into by bar counsel and respondent. In addition, we heard oral argument from both parties on February 3, 1995.

We adopt the stipulated facts by reference and incorporate them as our own. Below is a brief summary of those facts as well as our own conclusions of law.

### FACTS

Respondent has been a member of the Vermont Bar for over 40 years. He is a solo practitioner in St. Albans.

Respondent represented Mrs. Mable Barr who passed away on November 14, 1992. In her will she named Mr. Heald as executor of her estate. She left a small estate, consisting primarily of a small house of limited value. She left liquid assets valued at under $1,500.

The liquid assets were insufficient to maintain the house. The house needed to be sold quickly to prevent deterioration, risk, and devaluation of it. There was also a joint savings account which Mrs. Barr had held with her brother and which might have been used to maintain the house. However, upon Mrs. Barr's death, her brother withdrew the entire balance and divided it among the heirs.

Immediately upon Mrs. Barr's death, respondent promptly accomplished a number of required tasks. He obtained the consent of the available interested parties to open a testate estate. He promptly prepared a Petition to Open and a Motion to Appoint a Special Administrator. He arranged to have the property appraised. He obtained the last known address of a missing heir.

However, for reasons which are not clear to the Board, respondent was dilatory in pursuing his obligations in probate court. He did not file the petition until six weeks after it was executed and did not file the motion until nearly four months after it was prepared. He delayed nearly eight months in notifying the missing heir through publication. When he was finally appointed as special administrator, he filed an inventory one year after it was due. After respondent was appointed executor on November 3, 1993, he failed to respond to two orders from the probate court requesting the accounting and eventually filed it three months after it was due.

Respondent was also negligent in connection with the sale and maintenance of the real estate. Respondent was appointed special administrator on March 10, 1993. Approximately one week later,

the home insurance on the property was canceled for lack of premium payment. Respondent received a copy of the notice of cancellation but did not perform a reasonable inquiry or investigation on the status of the home insurance. The property remained uninsured through October 20, 1993.[1]

In November of 1993, immediately after he had been appointed as executor, respondent signed a contract to sell the house for $55,000. The house had been appraised the previous January at $41,000. Closing was scheduled for January 31, 1994.

The buyers were to apply for a loan through the Farmers' Home Administration. FMHA, by statute, must decide on a loan within 30 days of the date of application. Respondent failed to check on the status of the loan application until a month and a half after the scheduled closing date. He then learned that the buyers had never submitted a loan application.

Respondent immediately contacted the buyers, who informed him that they were no longer interested. The buyers were essentially judgment proof, so that a breach of contract action was not feasible.

The next month, respondent listed the property with a local realtor. In the summer of 1994, a potential purchaser offered $52,000 for the property, with the closing costs to be paid by the estate. Respondent did not inform the heirs of this offer. He counter-offered with a proposal of the full asking price, $55,000, and $1,000 toward the closing costs. No agreement was reached.

In July 1994, a third potential purchaser offered $50,000 for the property, and a purchase and sales agreement was executed. However, when she was unable to obtain financing, the contract dissolved.

Finally, in late October of 1994, at the request of the heirs, respondent contracted to sell the house for a total purchase price of $41,000, the originally appraised value.

## CONCLUSIONS

Respondent neglected his responsibilities to the Mable Barr estate and to the probate court in not, in a diligent manner, petitioning to open the estate; attempting to notify a missing interested party; filing necessary pleadings, inventories and accountings; maintaining the real property in good repair; maintaining the insurance; and marketing and selling the real property. This conduct constitutes a violation of DR 6-101(A)(3).[2]

Further, a small estate such as this one should not have remained in probate for over two years. The only asset that required liquidation was a small house. Respondent's extreme lack of attention to the probate court's requirements and to the marketing and sale of a small, isolated asset constitutes conduct prejudicial to the administration of justice, in violation of DR 1-102(A)(5).[3]

As a direct result of respondent's neglect, the probate process has been unnecessarily prolonged and the heirs have been denied the inheritance due to them. Although there appears to have been only limited financial injury to the heirs, there was the potential for injury to the estate. The house remained unsold and uninsured for a very long period, with the potential for catastrophic injury. Had respondent been diligent in his responsibil-

---

[1] The house remained empty through the winter of 1993-94. Although the pipes in the house froze because of the lack of heating fuel, there was no apparent damage to the property.

[2] DR 6-101(A)(3) provides that "[a] lawyer shall not [n]eglect a legal matter entrusted to him."

[3] DR 1-102(A)(5) provides that "[a] lawyer shall not [e]ngage in conduct that is prejudicial to the administration of justice."

642

ities to usher the estate through the probate process and to market and sell the real property, the potential for injury would have been substantially reduced.

## RECOMMENDED SANCTION

We recommend that the Vermont Supreme Court publicly reprimand Mr. Heald for his professional misconduct in this case. In making this recommendation, we rely upon § 4.43 of the ABA Standards for Imposing Lawyer Sanctions.[4]

We find that respondent acted negligently, not willfully or knowingly, in disregarding the duty of diligence which he owed the estate and the court. There are no mitigating factors and several aggravating factors:

> 1. Respondent has a prior disciplinary history. He was recently admonished by this Board for misconduct very similar to the instant case. See *In re PCB File No. 93.14*, II PCB Reporter 65 (April 1, 1994).
> 2. There is a pattern of misconduct.
> 3. Respondent has substantial experience in the practice of law.

Had any real injury resulted from respondent's misconduct, we would not hesitate to recommend suspension from the practice of law. Given the lack of real injury, we believe that a public reprimand is appropriate. However, because respondent has demonstrated a substantial failure to comply with court deadlines, we recommend that respondent be required to complete 6 hours of training in time management as part of his annual mandatory continuing legal education.

---

[4] Section 4.43 provides, in pertinent part: "Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.